1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**FRESNO DIVISION**

| | |
|---|---|
| FRANK GONZALES,<br><br>                         Petitioner,<br><br>              vs.<br><br>KEN CLARK, Warden,<br><br>                         Respondent. | Civil No.        1:07-00007 RTB (POR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS [DOC. NO. 1]** |

## I.    INTRODUCTION

Frank Gonzales, a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging the prison disciplinary decision of September 30, 2005, which resulted in a credit forfeiture for the charge of resisting staff.  (Mem. P&A Supp. Answer, Exhibit 3 at 4.)  Gonzales contends his federal due process rights were violated because he was not given adequate notice of the disciplinary charges to present a defense and the administrative grievance process is inadequate.  (Pet. at 7, 16.)[1]

The Court has considered the Petition, Respondent's Answer and Memorandum of Points and Authorities in Support thereof (hereinafter "Respt's Mem."), and all the supporting documents submitted by the parties.  Based upon the documents and evidence presented in this case, and for the reasons set forth below, the Court **DENIES** the Petition.

---

[1]The Petition does not contain page numbers, therefore the Court refers to the pagination imprinted by the Clerk's office upon receipt of the Petition.

## II.     FACTUAL BACKGROUND

The facts as found in the Crime/Incident Report are as follows:  On Friday, September 30, 2005, Officer Phillips observed Gonzales and his cell mate Saunders dividing what appeared to be a white powdery substance on the top of a shelf.  (Respt's Mem. Exhibit 3 at 3.)  Phillips summoned another officer, and ordered the inmates to stop and be handcuffed.  (*Id*.)  Both inmates refused and continued their actions.  (*Id*.)  Several other officers arrived, however both inmates continued to refuse orders to cuff up.  (*Id*.)  An officer ordered that the cell door be opened, but Saunders had placed rolled up paper in the door track preventing the cell door from opening.  (*Id*.)  Officer Milam used a lever to pry the rolls of paper up, allowing the door to partially open.  (*Id*.)  Inmate Saunders lunged towards the door, slamming it shut, and attempted to jam the paper in the track again.  (*Id*.)  Milam again pried the paper up allowing the door to be opened.  (*Id*.)  Upon opening the cell door, inmate Saunders attempted to slam the cell door on Officer Garrison.  (*Id*.)

When Officer Garrison and Officer Govea opened the cell door Gonzales ran towards the toilet, threw the substance into the toilet and flushed the toilet.  (*Id*.)  When Officer Garrison entered the cell, Saunders lunged toward him, necessitating Garrison to use his pepper spray.  (*Id*.)  Garrison sprayed Gonzales and Saunders with one continuous spray to the facial area to gain compliance.  (*Id*.)  Both inmates backed away from the cell door and sat on the lower bunk.  (*Id*.)  An officer then ordered Saunders and Gonzales to lay in a prone position on the floor and crawl out of the cell backwards so they could be placed in handcuffs.  (*Id*.)  Both inmates refused the order and Officers Lantz and Nichols used pepper spray to gain compliance.  (*Id*.)  Gonzales complied by laying down in a prone position on the floor and crawling backwards towards the cell door.  (*Id*.)  Officer Deathriage grabbed inmate Gonzales by both ankles and took him out of the cell.  (*Id*.)  Officer Garrison grabbed Gonzales' hands and Officer Miram handcuffed him.  (*Id*.)  Officers Govea and Clark escorted Gonzales "to the Program Office for medical evaluation, decontamination and interview."  (*Id*.)

Gonzales was issued a Rules Violation Report ("RVR"), or CDC 115, for resisting staff. (Respt's. Mem Exhibit 2.)  Officer Dutra was assigned to Gonzales as an Investigative Employee, however Gonzales objected to Dutra's assignment, after which Officer Provencio was assigned to Gonzales as his second Investigative Employee.  (*Id*.)  Provencio interviewed Gonzales on October 12,

1    2005, regarding the incident. (Respt's Mem. Exhibit 4 at 2.) Provencio also interviewed Officers

2    Garrison, Nichols, Phillips, Sierra, Milam, Govea, Deathriage, Clark, Roberts, Lieutenant Scott, and

3    Sergeant Lantz, and recorded their statements in a report which also included Petitioner's request for the

4    above witnesses at the hearing. (*Id*. at 2-5.) In preparation for the hearing, Gonzales requested employee

5    witnesses but did not present any questions for the staff. (*Id*. at 4.) Petitioner requested the video tapes

6    of the yard from September 30, 2005, however the tapes were not retrieved and submitted. (*Id*.)

7    Gonzales also requested the results of his urinalysis and the facility activity report, but the evidence was

8    determined to be irrelevant to the specific act with which he was charged. (*Id*.) In addition, Gonzales

9    requested inmate witnesses but could not provide the names or numbers of the inmates. (*Id*.) Petitioner

10    was given a copy of the investigative employee's report on October 18, 2005.

11        A hearing on the incident was held on October 27, 2005. (Respt's Mem Exhibit 5 at 2.) At the

12    hearing, Petitioner acknowledged that he had received the investigative employee's report, a

13    supplemental report by Sergeant Lantz, and the incident report more than twenty-four hours in advance

14    of the hearing, and that he was ready to proceed. (*Id*.) The charges were read and Gonzales pled not

15    guilty. (*Id*.) Petitioner questioned Lieutenants Scott, Garrison, and Spearman, and Correctional Officers

16    Govea and Milam about the incident. (*Id*. 2-4.) Although Gonzales requested their presence, Sergeant

17    Lantz, Officers Phillips, Nichols, Sierra, Deathriage and Clark were denied because the Senior Hearing

18    Officer ("SHO") determined these witnesses did not observe Gonzales being escorted across the yard

19    and therefore did not possess information relevant to the charges. (*Id*. at 2.) The report of the hearing

20    states that Gonzales was found guilty of resisting staff based on the testimony of the officers, and

21    Gonzales' own statement that he became resistant during the escort across the recreation yard. (*Id*.) As

22    a result, Gonzales was assessed a credit forfeiture of 30 days and a 30 day loss of yard privileges. (Pet.

23    at 55.) According to the Department of Corrections, Petitioner received a copy of the decision on

24    November 9, 2005. (Respt's Mem. Exhibit 7 at 2.)

25    //

26    //

27    //

28    //

1    ### III.  PROCEDURAL BACKGROUND

2          Gonzales filed an administrative appeal on December 5, 2005.  (Pet. at 68.)  On December 15,

3    2005, the appeal was denied as untimely.  (Respt's Mem. Exhibit 7.)  The appeal decision stated that

4    Gonzales was issued the CDC 115 on November 9, 2005, and that he should have submitted his appeal

5    by November 24, 2005.  (*Id.*)  The decision further stated that Gonzales could challenge the denial by

6    submitting an explanation and supporting documentation explaining why he did not file a timely appeal.

7    (*Id.*)  Gonzales submitted an appeal on December 20, 2005, stating he did not receive the hearing

8    decision until December 2, 2005, and his appeal was therefore timely.  (Pet. at 67.)  Petitioner's second

9    appeal was returned to him with a copy of the previous denial.  (*Id.*)

10         On January 5, 2006, Gonzales filed a petition for writ of habeas corpus in the Fresno County

11   Superior Court challenging the outcome of the RVR hearing in case number 06CRWR677737.  (Respt's

12   Mem., Exhibit 8.)  On January 14, 2006, the Petition was denied for Petitioner's failure to exhaust his

13   administrative remedies and on the merits.  (*Id.*)

14         On February 1, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court

15   of Appeal in case number F049685.[2]  On February 9, 2006, the Court of Appeal silently denied the

16   petition.  (Respt's Mem. Exhibit 9.)

17         On May 1, 2006, Gonzales filed a petition for writ of habeas corpus in the California Supreme

18   Court in case number S143023, which was denied without comment or a statement of reasoning on

19   December 20, 2006.  (Respt's Mem. Exhibit 10.)

20         On January 4, 2007, Petitioner filed the present Petition for Writ of Habeas Corpus with the

21   Eastern District of California.  [Doc. No. 1.]  On April 9, 2008, Respondent filed an Answer.  [Doc. No.

22   10.]  Petitioner has not filed a Traverse.[3]  The matter was assigned to Judge Roger T. Benitez on

23   November 25, 2008.  [Doc. No. 14.]

24   //

25   //

26   

27        [2] Petitioner signed the proof of service attached to this petition on February 7, 2007.  (Lodgment No. 9.)

28        [3]The Court granted Petitioner three extensions of time to file his Traverse, the last requiring him to file
     by July 1, 2009. [Doc. No. 20.]

07cv00007

1    **IV.     DISCUSSION**

2         **A.     Scope of Review**

3         Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal

4    habeas corpus claims:

5              The Supreme Court, a Justice thereof, a circuit judge, or a district court shall
              entertain an application for a writ of habeas corpus in behalf of a person in custody
6              pursuant to the judgment of a State court only on the ground that he is in custody in
              violation of the Constitution or laws or treaties of the United States.
7

8    28 U.S.C.A. § 2254(a) (West 2006) (emphasis added).

9         The current Petition is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996

10   ("AEDPA").  *See Lindh v. Murphy*, 521 U.S. 320 (1997).   As amended, 28 U.S.C. § 2254(d) reads:

11             (d) An application for a writ of habeas corpus on behalf of a person in custody
              pursuant to the judgment of a State court shall not be granted with respect to any claim
12             that was adjudicated on the merits in State court proceedings unless the adjudication of
              the claim –
13
              (1) resulted in a decision that was contrary to, or involved an
14             unreasonable application of, clearly established Federal law, as
              determined by the Supreme Court of the United States; or
15
              (2) resulted in a decision that was based on an unreasonable
16             determination of the facts in light of the evidence presented in the State
              court proceeding.
17

18   28 U.S.C.A. § 2254(d)(1)-(2) (West 2006) (emphasis added).

19        Because the Petition was filed after AEDPA's effective date, and because the claims were

20   adjudicated on their merits in the superior court, Gonzales must satisfy either § 2254(d)(1) or

21   § 2254(d)(2) to obtain federal habeas relief.  *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).  The

22   Supreme Court interprets § 2254(d)(1) as follows:

23             Under the "contrary to" clause, a federal habeas court may grant the writ if the state court
              arrives at a conclusion opposite to that reached by this Court on a question of law or if
24             the state court decides a case differently than this Court has on a set of materially
              indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas
25             court may grant the writ if the state court identifies the correct governing legal principle
              from this Court's decisions but unreasonably applies that principle to the facts of the
26             prisoner's case.

27   *Williams*, 529 U.S. at 412-13; *see also Lockyer v. Andrade*, 538 U.S. 63, 73-74 (2003).

28   //

1    Where there is no reasoned decision from the state's highest court, the Court "looks through" to

2    the underlying appellate court decision. *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991).

3    **B.    Analysis**

4    Gonzales raises two issues:  (1) his due process rights were violated by the failure of prison

5    officials to provide him with adequate notice of the disciplinary charges to allow him to prepare a

6    defense, and (2) the administrative grievance process is either inadequate or unavailable to Petitioner.

7    (Pet. at 7, 16.)  Respondent argues that Petitioner's federal habeas claims are barred because he has

8    procedurally defaulted those claims.  (Answer at 4.)  Respondent further argues that to the extent the

9    Court considers the merits of Petitioner's claims, Petitioner is not entitled to relief because the state court

10   decisions are neither contrary to, nor an unreasonable application of, clearly established federal law as

11   determined by the United States Supreme Court.  (*Id.*).

12       1.    Procedural Default

13   Respondent argues that Gonzales' "failure to exhaust his administrative remedies constitutes a

14   procedural default." (Respt's Mem. at 5.)  According to Respondent, the Fresno Superior Courts denial

15   of Petitioner's habeas petition based on his failure to fully exhaust his administrative remedies

16   constitutes an independent and adequate state ground.  (*Id.* at 6.)  Petitioner has not filed a Traverse

17   challenging Respondent's contentions.

18   Federal courts will not review a question of federal law decided by a state court if the decision

19   of that court rests on a state law ground that is independent of the federal question and adequate to

20   support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  A state procedural rule

21   is "independent" if it is not interwoven with federal law. *LaCrosse v. Kernan*, 244 F.3d 702, 704 (9th

22   Cir. 2001).  A state rule is "adequate" if it is "clear, consistently applied, and well-established" at the

23   time of the default. *Calderon v. United States District Court*, 96 F.3d 1126, 1129 (9th Cir. 1996).  The

24   Ninth Circuit has held that because procedural default is an affirmative defense, Respondent must first

25   have "adequately pled the existence of an independent and adequate state procedural ground . . . ."

26   *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003).  Once the state has satisfied its burden of raising

27   the defense, the burden to place the defense in issue shifts to the petitioner.  The petitioner may satisfy

28   this burden by asserting specific factual allegations that demonstrate the inadequacy of the state

-6-

1   procedure, including citation to authority demonstrating inconsistent application of the rule. *Id.* The

2   "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets

3   its ultimate burden under *Bennett*, or if Petitioner fails to challenge the application of the procedural bar,

4   federal review of the claim is foreclosed unless a petitioner can "demonstrate cause for the default and

5   actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider

6   the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

7          As a threshold matter, Gonzales has not met his interim burden under *Bennett* because he did not

8   file a Traverse and therefore has not asserted factual allegations that demonstrate the inadequacy of the

9   state procedure.  However, even if Petitioner can prove that his failure to exhaust administrative

10   remedies was solely because prison officials intentionally misrepresented the date upon which Petitioner

11   was given the report, thereby making his appeal untimely, he cannot show that he was prejudiced by the

12   act because, as discussed below in section IV (B)(2), his claims have no merit.  Established precedent

13   in this Circuit dictates that a court's decision on the issue of procedural default is to be informed by

14   furthering "the interests of comity, federalism, and judicial efficiency." *Boyd v. Thompson*, 147 F.3d

15   1124, 1127 (9th Cir. 1998).  Thus where, as here, deciding the merits of a claim proves to be less

16   complicated and less time-consuming than adjudicating the issue of procedural default, a court may

17   exercise discretion in its management of the case and its own docket to reject the claims on their merits

18   and forgo an analysis of cause and prejudice. *Batchelor v. Cupp*, 693 F.2d 859, 864 (9th Cir. 1982).

19          2.   Merits

20          Gonzales argues that his due process rights were violated because he did not receive adequate

21   notice of the charges against him to prepare his defense and that the appeals process is flawed because

22   he was not allowed to file a timely appeal.  Specifically, Gonzales alleges that the reports he received

23   in advance of the hearing did not include any allegations that he resisted officers while being escorted

24   across the yard to the medical facility, yet the officers testified during the hearing that he resisted them

25   while in transit, and this was the offense of which he was found guilty. (Pet. at 10.) Gonzales asserts

26   that under *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974), he had a right to notice of all of the alleged

27   offenses being brought against him to enable him to marshal the facts and prepare a defense. (*Id.* at 13.)

28   In addition, Petitioner asserts in claim two that the administrative appeal process is inadequate because

1   the appeals coordinator denied his appeal as untimely without addressing his contention that he did not

2   receive the final copy of the RVR until December 5, 2005.  (Pet. at 16, 23.)  As a result, Petitioner argues

3   that the appeals coordinator thwarted his attempt to exhaust remedies by failing to accept Petitioner's

4   appeal and the Court should not dismiss his claims for failure to exhaust administrative remedies, but

5   instead should address his claims on the merits.  (*Id*. at 23.)  Because this Court addresses the merits of

6   Petitioner's claims, this claim is moot.

7       Respondent counters that Petitioner received all the process due under *Wolff* because he received

8   written notice of the charges, a statement of the evidence relied upon by the prison officials and the

9   reasons for the disciplinary action.  (Respt's Mem. at 8.)

10      On February 1, 2006, Petitioner filed a petition for writ of habeas corpus in the California Court

11  of Appeal raising this issue.  (Exhibit 12.)  On February 9, 2006, the Court of Appeal denied the petition

12  without comment or citation of authority.  (Exhibit 9.)  Petitioner raised this claim in a petition for writ

13  of habeas corpus filed in the California Supreme Court on May 1, 2006.  (Exhibit 13.)  The Supreme

14  Court denied the petition without comment or citation of authority on December 20, 2006.  (Exhibit 10.)

15      Therefore, the Court "looks through" to the last reasoned state court decision which was

16  issued by the Fresno Superior Court.[4]  (Respt's Mem. Exhibit 8.)  That court denied the petition on

17  procedural grounds and on the merits, stating:

18          Having considered the petition for writ of habeas corpus dated January 3, 2006
            and filed on January 5, 2006, the court finds that existing evidence does not establish that
19          petitioner has fully exhausted his existing administrative remedies within the California
            Department of Corrections.  However, even if this court were to conclude that petitioner
20          has been wrongfully denied access to the appeal process, the current evidence does not
            establish any error warranting the requested relief.  The petition is denied.

21

22  (*Id*.)

23  //

24  //

25

26  _____

4Under the "look-through" doctrine set forth in *Ylst*, the California Supreme Court's summary denial is
27  deemed to rest on the same grounds as the superior court's decision.  *Ylst*, 501 U.S at 804-805.  In *Ylst*, 501 U.S.
    at 805, the United States Supreme Court said that federal habeas courts should look through postcard denials to
28  the last reasoned state court decision on the issue and presume that the unexplained postcard denial rests upon
    the same ground.  *Id*. at 803.  *Campbell v. Rice*, 408 F.3d 1166, 1170 (9th Cir.), *cert. denied*, 126 S.Ct. 735
    (2005) (looking through silent denial by state supreme court to the appellate court decision which did not address
    the issue and then to the trial court opinion which did).

07cv00007

1    Where a prisoner is subjected to the loss of credits in a prison disciplinary hearing, the United

2  States Supreme Court has held that due process is satisfied if the inmate receives advanced written notice

3  of the claimed violation, a written statement of the evidence relied upon by the prison officials in support

4  of the decision, and the right to call witnesses and present documentary evidence where the presentation

5  of such would not be unduly hazardous to institutional safety or correctional goals.  *Wolff*, 418 U.S. at

6  563-66.  Gonzales was found guilty of resisting staff while being escorted across the yard in a prison

7  disciplinary hearing, and was assessed a credit forfeiture of 30 days, therefore the due process protections

8  of *Wolff* apply. (Exhibit 5, Pet. at 55.)  Petitioner argues that he was given inadequate notice of the

9  pending charges against him because the written report he received prior to the hearing discussed only

10  the incident within the cell, and made no mention of his resisting staff while being escorted to the

11  medical facility making it impossible for him to adequately defend against the charges.  Respondent

12  claims Petitioner received all the process he was due under *Wolff,* and that under *Superintendent v. Hill*,

13  472 U.S. 445 (1985), the disciplinary action must be upheld because there was some evidence to support

14  the finding of guilt.  (Respt's Mem. at 7-8.)

15    Here, Gonzales received advanced written notice of the charges against him in the form of a pre-

16  hearing copy of the Rules Violation Report, otherwise known as the CDC-115, on October 6, 2005.

17  (Respt's Mem. Ex. 5 at 2.)  According to the CDC-115, Petitioner violated section 3005(c), Force and

18  Violence.  (Pet. at 55.)  Petitioner also acknowledged receiving numerous written reports which could

19  be used as evidence against him including the CDC-115, CDC-115A, Investigative Employee ("I.E.")

20  Report submitted by K. Dutra, Supplemental Report by Sergeant R. Lantz, and Incident Report Log

21  # PVP-FAP-05-09-0391.  (Respt's Mem. Ex. 5 at 2.)  The CDC-115 includes an explanation of the

22  incident that occurred in Petitioner's cell, but omits any description of what occurred during his transport

23  across the yard, which is the conduct for which Petitioner was assessed a credit forfeiture.  (*Id*. at 6)

24    The hearing report concluded that Gonzales was guilty of resisting staff based on witness

25  testimony from Lieutenants Scott and Spearman who observed Gonzales resisting staff while being

26  escorted across the yard, testimony from Officers Garrison, Govea and Milam who stated that Gonzales

27  resisted their attempts to escort him across the yard,  Gonzales's statement during the hearing that he was

28  resisting because he couldn't breathe, and "the inmate's own admission of guilt . . . to this SHO [Senior

1   Hearing Officer].”  (Exhibit 5 at 4.)  The Report included additional comments regarding the findings

2   stating:

3           Although the Reporting Employee's Report does not indicate Gonzales resisting
        staff[,] senior hearing officer (SHO) finds that in considering the information provided
4       during the hearing[,] the circumstance tends to support the charge of Resisting Staff, in
        that the defendant had already been Pepper Sprayed and became resistive during the
5       escort across the Recreation Yard.  Also Witness Testimony is reliable and indicates
        Gonzales resisted during the escort.  These findings are also based on Gonzales's
6       statement to this SHO during the hearing, where he indicated that he was resistive
        because he could not breathe and they were escorting him to the Program Office and not
7       the MIA Clinic.

8   (Exhibit 5 at 4.)

9           Officer Govea gave conflicting descriptions of escorting Gonzales.  In a Crime/Incident Report

10  completed on September 30, 2005, Govea stated that he “escorted Gonzales to Alpha Program Services

11  for decontamination and interview *with no further incident*.”  (Pet. at 34)(emphasis added.)  However,

12  when asked whether Gonzales was resistant during the hearing, Govea testified that:

13          [Gonzales] made his body limp and indicated he couldn't breathe.  Gonzales started
        pushing his arms back and not cooperating with the escort complaining he had asthma
14      and could not breathe.  Due to his complaining and his resistive behavior we placed him
        on the ground near a sprinkler to let water into his face to [help] him to breathe better.
15

16  (Exhibit 5 at 3.)

17          Officer Govea's recollections on the day of the incident that he escorted Gonzales with ‘no

18  further incident’ do not comport with his later testimony that Gonzales became resistant during the

19  escort.  However, the fact that Gonzales requested the yard surveillance tape from September 30, 2005,

20  indicates that Petitioner was on notice that events which occurred during his transit were potentially in

21  dispute, even though the CDC-115 did not include a description of him resisting during transit.

22  Petitioner's request for the surveillance tape provides circumstantial evidence from which the Court may

23  draw an inference that he was on notice of the charges against him.  As the Court in *Wolff* stated, an

24  inmate must have sufficient notice to “marshal the facts in his defense and clarify what the charges are.”

25  *Wolff*, 418 U.S. at 564.  Although the written reports received by Gonzales prior to the hearing do not

26  detail the events of his transport across the yard, his request for the surveillance tape of the yard during

27  that time demonstrates that he was sufficiently aware of the charges against him that he was afforded the

28  opportunity to marshal facts in support of his defense.  The Court finds enough support for the

1   allegations that Petitioner was aware of the charges to satisfy the due process requirements of *Wolff*.[5]

2   Petitioner received advanced written notice of the charges against him, was provided a written report

3   summarizing the evidence against him and the findings of the SHO, and was allowed to call witnesses

4   and request documentary evidence.

5           Even if the Court were to find deficiencies in the written notice, the Supreme Court has held that

6   a disciplinary conviction supported by "some evidence" is sufficient to satisfy due process.   As

7   Respondent notes, a disciplinary conviction resulting in the loss of good time credits must be supported

8   by "some evidence" to satisfy due process, citing *Hill*, 472 U.S. at 455-56.  (Resp.'s Mem. at 8.)  In *Hill*,

9   two inmates received disciplinary reports charging them with assaulting another inmate, and in separate

10  hearings, a prison guard presented his report and testified to the prison disciplinary board.  *Id.*, 472 U.S.

11  at 445.  According to the evidence, the guard responded to a noise he heard in a prison walkway, and

12  when he arrived, he saw the victim and three inmates, including the respondent inmates,  running away.

13  *Id.*   The Board found the inmates guilty and revoked their good time credits.   *Id.*   The inmates

14  unsuccessfully appealed to the prison superintendent, then filed a complaint in Massachusetts Superior

15  Court alleging that their due process rights had been violated because there was no evidence to support

16  the board's findings.  The Superior Court granted summary judgment and the Massachusetts Supreme

17  Judicial Court affirmed.  *Id.* at 448-49.

18          The United States Supreme Court reversed, holding that "the requirements of due process are

19  satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time

20  credits."  *Id.*   To satisfy this requirement, the relevant inquiry "is whether there is any evidence in the

21  record that could support the conclusion reached by the disciplinary board."  *Id*. at 455.  The Court

22  further held that, although the evidence was meager in that case, the record was "not so devoid of

23  evidence that the board's findings were without support or otherwise arbitrary."  *Id*. at 457.

24          Here, as in *Hill*, the prison board's decision was supported by the testimony of prison guards and

25  evidence in the record.  Multiple officers testified during the hearing that Gonzales was resisting staff

26  as he was escorted across the yard.  Officer Govea testified, as noted above, that Gonzales resisted during

27

28          [5]Petitioner does not challenge the adequacy of the remaining requirements under *Wolff*, that prison
    officials provide written records of the proceedings and that the inmate be allowed to call witnesses and present
    evidence, arguably because there is sufficient documentary support for the decision and because he was allowed
    to call witnesses at the hearing.

the escort by making his body limp and saying he couldn't breathe.  Similarly, Lieutenant Scott testified that "Gonzales was resisting staff by dragging his feet. He seemed to get hysterical and  staff had to stop the escort and place him near a sprinkler to decontaminate him from exposure to Pepper Spray. Gonzales kept pulling away from staff and being uncooperative with the escorting officers." (Exhibit 5 at 2.)  Officer Garrison testified that Gonzales resisted during transport by "dragging his feet and not walking, he was pulling his arms away from us." (*Id*. at 3.)  Officer Milam testified that Gonzales resisted during transit by making his body limp and not cooperating with "our order to keep walking. He was resistive by pushing his arms back and not walking." (*Id*. at 4.)  In addition, Officer Spearman stated that:

> I observed Gonzales being escorted in handcuffs across the yard.  Gonzales was resisting staff by attempting to pull away the whole time.  I could tell he was Pepper Sprayed as I am a range master and know the affects[sic].  Gonzales finally fell down into the gravel area and refused to get up.  MTA Johnston assessed him and he was decontaminated with water from a yard sprinkler because he continued to refuse to get up.

(*Id*. at 5.)

The numerous witness descriptions of Gonzales' actions during the escort, along with Petitioner's request for the surveillance tape of the yard, provide "some evidence" to support the decision of the prison officials.[6]  Further, Gonzales does not state what additional evidence he would have introduced or preparation he would have undertaken had he been given advance written notice of the charges against him arising from the transport across the yard, and how it would have made a difference in the outcome of the hearing.  In light of the above, the state court decision upholding the disciplinary conviction is not contrary to, or an unreasonable application of, clearly established United States Supreme Court authority. *Hill*, 472 U.S. at 457.

### 3.   Judicial Notice

Petitioner requests this Court take judicial notice of California Code of Regulations, Title 15 section 3084.1 and department operations manual sections 54100 for purposes of the petition but does not explain the reasons for this request.  (Pet. at 20.)

---

[6]The Court notes that there is no written evidence in the record to support the SHO's comment that Gonzales admitted guilt by acknowledging during the 115 hearing that he couldn't breathe during the escort. However, even without this evidence, there is "some evidence" supporting the finding of the board in light of the testimonial evidence of multiple officers who either escorted Petitioner or observed the escort across the yard.

07cv00007

1    Under Federal Rules of Evidence Rule 201, judicial notice shall be taken by a court if requested

2    by a party and supplied with the necessary information. Fed. R. Ev. 201(d).  Petitioner has not supplied

3    this Court with any information to support his request for judicial notice.  In addition, it is not clear how

4    judicial notice of the requested documents would serve Petitioner in the resolution of his claims.

5    Therefore, Petitioner's Request for Judicial Notice is **DENIED**.

6    **V.        CONCLUSION**

7         Having considered Gonzales' Petition, Respondent's Answer and Memorandum of Points and

8    Authorities in Support of the Answer, as well as all the documents and legal authorities submitted by

9    the parties, for all the foregoing reasons the Court **DENIES** the petition and **DENIES** Petitioner's

10   request for judicial notice.  The Clerk of Court is directed to enter a judgment denying the petition with

11   prejudice.

12

13   **IT IS SO ORDERED.**

14

15   DATED:  November 18, 2009

16   _____

17   Hon. Roger T. Benitez
     United States District Judge

18

19

20

21

22

23

24

25

26

27

28

-13-

07cv00007